UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE A. JUSINO,<br>     Plaintiff,<br><br>     v.<br><br>LALITHA PIERI,<br>     Defendant. | No. 3:22-cv-92 (SRU) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Jose A. Jusino ("Jusino") is serving a life sentence in the Connecticut Department of Correction.  He sued Dr. Lalitha Pieri ("Pieri") under the Eighth Amendment for deliberate indifference to his mental health needs.  Pieri moved for summary judgment on the grounds that Jusino fails to state a cognizable Eighth Amendment claim and that she is protected by qualified immunity.  For the reasons set forth below, I **grant** Pieri's motion for summary judgment, **doc. no. 79**, **deny** Jusino's motion for sanctions, **doc. no. 91**, and **deny** Jusino's motion for leave to amend the amended complaint, **doc. no. 96**.

    **I.**       **Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113 (2d Cir. 2017).  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense."  *Giordano v. Mkt. Am., Inc.*, 599

F.3d 87, 93 (2d Cir. 2010).  In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (cleaned up).

The moving party bears the initial burden of informing the court of the basis for its summary judgment motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party "demonstrates the absence of a genuine issue of material fact," the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (cleaned up).  The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation," *id.*, and must present evidence that would allow a reasonable juror to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Courts must liberally construe a self-represented party's briefing interpret them "to raise the strongest arguments that they suggest."  *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  Even so, "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**II.   Background**

A.  Factual Background

The facts are taken from the parties' Local Rule 56(a) Statements and supporting exhibits.[1]

---

[1] Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement indicating whether the opposing party admits or denies the facts set forth by the moving party.  Each denial must include a specific citation to an affidavit or other admissible evidence, such as deposition testimony or responses to discovery requests.  D. Conn. L. Civ. R. 56(a)3.  Dr. Pieri informed Jusino of that requirement.  *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment as Required by Local Rule of Civil Procedure 56(b), Doc. No. 79-3.

Jusino amended his Local Rule 56(a) Statement on September 22, 2023 to include "additional material facts" with citations to affidavits and discovery responses. Stmt. of Material Facts, Doc. No. 90 at 6-9. To the extent that Jusino has not refuted Dr. Pieri's Statement with specific citations to admissible evidence, Dr. Pieri's facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule.").

The incidents underlying this action occurred while Jusino was confined at MacDougall-Walker Correctional Institution ("MWCI"). Def.'s R. 56(a) Stmt., Doc. No. 79-2 ¶ 1. MacDougall-Walker Correctional Institution has two buildings, the MacDougall building ("MacDougall") and the Walker building ("Walker"). Doc. No. 79-2 ¶ 2. The defendant, Dr. Lalitha Pieri, was the supervising psychologist at MacDougall. *Id*. ¶ 4. Dr. Leonard Santarsiero was the supervising psychologist at Walker. *Id*. ¶ 5. Katharine Ferrone and Madeline Schena, now Stocking, were licensed clinical social workers ("LCSWs") at MacDougall. *Id*. ¶¶ 6-7.

At all relevant times, the Department of Correction ("DOC") assigned Jusino a mental health classification score of 3. *Id*. ¶ 9. Level 3 classifications are intended for individuals whose mental health diagnoses are manageable on an outpatient basis. *Id*. ¶ 10. At the time, DOC policy required those with a score of 3 to be treated with an individual therapy session at least once a month. *Id*. ¶ 11.

Jusino was transferred to MWCI to transition into the general population after he was confined in restrictive housing for thirteen years at another facility. *Id*. ¶ 12; Pl.'s Decl., Doc. No. 81 at 15 ¶ 3. Jusino was transferred first to Walker, then to MacDougall. *See* Doc. No. 79-2

3

¶¶ 12-14.  Before Jusino was transferred to MacDougall, Dr. Santarsiero prepared and implemented a Behavior Management and Treatment Plan ("the Plan") for the MacDougall staff. *Id*. ¶ 13.  Once at MacDougall, Jusino began treatment with LCSW Ferrone.  *Id*. ¶ 14.

The Plan outlined three phases of treatment over a minimum of six months.  *Id*. ¶ 15.  In the third phase, Jusino would transition from weekly individual sessions with his mental health clinician to sessions every other week.  *Id*. ¶ 16.  Jusino would additionally be placed with a unit manager and custodial counselor with whom he had an established relationship for "emotional security and consistency."  *Id*. ¶ 17.

LCSWs are authorized to diagnose, treat, and assess mental health conditions.  *Id*. ¶ 22.  Before Jusino began treatment with LCSWs Ferrone and Schena, Dr. Pieri met with Ferrone to discuss Jusino's mental health care, including the Plan.  *Id*. ¶ 19.  Dr. Pieri did not directly participate in Jusino's regular treatment at MacDougall but met with him on three occasions in 2021.  *Id*. ¶ 21.

From November 2020 to October 2021, LCSW Ferrone treated Jusino using standard therapeutic techniques.  *Id*. ¶ 23.  Jusino was transferred to LCSW Schena in October 2021.  *Id*. ¶ 24.  That same month, Pieri decreased Jusino's individual therapy sessions from weekly to biweekly.  *Id*. ¶ 24.  Pieri decreased the frequency of Jusino's therapy sessions after reviewing Jusino's mental health records and consulting with Dr. Santarsiero and LCSW Ferrone.  *Id*. ¶ 25.  In Pieri's medical judgment, Jusino's then-existing mental health condition did not require weekly therapy sessions.  *Id*. ¶ 26.  Pieri did not personally examine Jusino before changing his therapy appointments;  she relied on his medical records and on information from those who had directly treated Jusino.  *Id*. ¶ 27.

LCSW Schena treated Jusino biweekly.  *Id*. ¶ 28.  Jusino was aware that, in addition to

his regular therapy sessions, he could request an urgent visit or "crisis call" to see a mental health provider in the event of an acute issue that needed prompt attention. *Id*. ¶ 30. Jusino was paired with Counselor Maiorana and Captain Walsh for additional support. *Id*. ¶ 31.

While confined at MacDougall, Jusino's mental health classification score remained at 3. *Id*. ¶ 34. Jusino's mental health treatment focused on his existing conditions and complaints. *Id*. ¶ 35.

B. Procedural History

Jusino filed this action *pro se* and has remained self-represented after being twice denied pro bono counsel. Doc. Nos. 7, 50. His amended complaint asserts a claim under 42 U.S.C. § 1983 of "Deliberate Indifference to [his] Mental Health Needs" in violation of the United States Constitution's Eighth Amendment. Doc. No. 34 ¶ 1. In an Initial Review Order of the amended complaint, the Honorable Sarah A. L. Merriam allowed Jusino's claim for damages against Pieri in her individual capacity to proceed, but dismissed the claim against Pieri in her official capacity. Doc. No. 40 at 8-10.

After discovery, Pieri moved for summary judgment. Doc. No. 79. Jusino moved to amend his complaint in light of "new discovery that Defendant fail[ed] to provide the Plaintiff." Doc. No. 96 at 1. Pieri objected on the grounds of futility and prejudice. Doc. No. 97.

III. Discussion

Jusino alleges Pieri was deliberately indifferent to his mental health needs. Pieri moved for summary judgment on the grounds that Jusino failed to state a cognizable deliberate indifference claim and that Pieri is protected by qualified immunity.

In his deposition, Jusino clarified that he challenges Pieri's failure to personally examine

him before she reduced the frequency of his individual therapy sessions. *See* Jusino Dep. Tr., Doc. No. 79-4 at 55:15-22 ("if Dr. Pieri would have had evaluated me and she would have determined, well, after evaluating you, I think that it's okay to restrict it, I wouldn't have argued with her, because she's a professional. She would have determined that. But she didn't do that."). Jusino also challenges Pieri's alleged failure to address his concern that the social workers were "misdiagnosing" him. *See id.* at 92:19-25; *see also* Pl.'s R. 56(c) Stmt., Doc. No. 90 at 7 ¶¶ 7-8.

The Eighth Amendment prohibits both deliberate indifference to serious medical and mental health needs of prisoners. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Pimentel v. Deboo*, 411 F. Supp. 2d 118, 128 (D. Conn. 2006) (cleaned up). A claim for deliberate indifference to medical or mental health needs is comprised of objective and subjective elements. *Spavone*, 719 F.3d at 138. A plaintiff must satisfy both elements to succeed. *See id*.

Objectively, the plaintiff must allege that the "deprivation of adequate medical care" is "sufficiently serious." *Id.* (cleaned up). Courts consider whether "a reasonable doctor or patient would find [the medical condition] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up). The objective prong requires a risk of "serious[] harm" if the plaintiff is denied medical care. *See*

6

*Spavone,* 719 F.3d at 138.

Subjectively, the defendant must have "kn[own] of and disregarded the plaintiff's serious medical needs." *Chance v. Armstrong*, 143 F.3d at 703.  The culpability required for a deliberate indifference claim exceeds mere negligence.  *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994).  The defendant must act with "culpable recklessness, i.e., an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

Pieri made her treatment decisions by reviewing Jusino's medical records and consulting the LCSWs with whom Jusino regularly interacted.  For the following reasons, no factfinder could determine that Pieri had the culpability required for a deliberate indifference claim.

Before Pieri reduced the frequency of Jusino's therapy sessions, she reviewed his medical records and conferred with Dr. Santarsiero and LCSW Schena.  *See* Decl. of Lalitha Pieri, Doc. No. 79-5 ¶ 25.  Pieri additionally collaborated with Dr. Santarsiero and LCSW Ferrone.  *See id*. ¶ 24.  Pieri determined it was not necessary to examine Jusino in person before she decreased his therapy sessions from weekly to biweekly.  *See id.* ¶ 25.

Jusino testified at his deposition that he did not know whether Pieri reviewed his records or conferred with other providers before decreasing his therapy sessions.  *See* Doc. No. 79-4 at 87:10-16 ("I know that she read the behavior-management plan . . . . As far as the psychiatric reports from the ward, she acknowledged that she had them.  But did she read them? I cannot confirm or deny that").  Jusino further testified that Dr. Pieri could assess his medical needs without personally examining him*. See id.* at 105:9-22 (Q: [Y]ou don't agree that Dr. Pieri . . . could have assessed you just based on your medical records and speaking to your providers; it's your contention that she has to meet with you in person if she was going to reduce your treatment

7

[to] every other week?  A: No . . . . I think assessing my psychiatric history, discussing it with the appropriate providers that are continuing to—I think that would be considered appropriate. . . . I'm not a professional; but my opinion, I would have been satisfied with that type of stuff."). Jusino has not presented enough "specific evidence" of his circumstances to give rise to a duty that Pieri personally examine him before making a medical decision. *See Brown v. Eli Lilly & Co.*, 654 F.3d at 358.

Jusino sought a different kind of mental health treatment than the therapy Pieri prescribed. *See, e.g.*, Doc. No. 79-4 at 106:2-5 ("it wasn't until the lawsuit got filed that, all of a sudden, here comes the borderline personality disorder treatment."). Although Pieri disagreed with Jusino about what kind of therapy he needed, Pieri prescribed him cognitive behavior therapy, commonly used to treat individuals with antisocial personality disorder and borderline personality disorder. Pieri Decl., Doc. No. 79-5 ¶ 19; *see* Santarsiero Decl., Doc. No. 79-6 ¶¶ 10, 17. Mere "disagreement with [the] choice of treatment is not evidence of [] deliberate indifference." *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d at 703.

Jusino also claims he was misdiagnosed. Jusino's Mental Health Treatment Plan listed antisocial personality disorder as a condition necessitating treatment. *See, e.g.,* Medical Records, Doc. No. 80 at 21. Department of Correction Administrative Directive 8.5 defines the Treatment Plan as "[a] comprehensive written tool for planning, implementing, and evaluating mental health interventions in response to specific problems in accordance with established goals." Doc. No. 79-14 at 2 § 3(I) (version of Directive 8.5 in effect during the relevant time period). A Treatment Plan is created when an inmate needs ongoing mental health services, is reviewed every 90 days, and is revised as needed. *Id.* at 3 § 6. Jusino's treatment team understood that he

exhibited symptoms of borderline personality disorder, *e.g.*, Santarsiero Decl., doc. no. 79-6 ¶¶ 10-11, but Jusino's Treatment Plan did not include borderline personality disorder. *See generally* Medical Records, Doc. No. 80.

The record indicates cognitive behavior therapy is an appropriate treatment for those with borderline personality disorder. Schena/Stocking Decl., Doc. No. 79-7 ¶ 8; Santarsiero Decl., Doc. No. 79-6 ¶¶ 17-18; Pl.'s Ex. A, Doc. No. 81 at 68. It is undisputed that Jusino received cognitive behavior therapy. Schena/Stocking Decl., Doc. No. 79-7 ¶ 7; Pieri Decl., Doc. No. 79-5 ¶¶ 18, 30. Even if Jusino's Treatment Plan should have included borderline personality disorder, he received a form of therapy that is medically appropriate for borderline personality disorder. Pieri's alleged failure to include borderline personality disorder on Jusino's Treatment Plan does not amount to "a conscious disregard of a substantial risk of serious harm." *Hill v. Curcione*, 657 F.3d at 123 (cleaned up).

I therefore conclude there is no genuine issue of material fact regarding the subjective element of Jusino's deliberate indifference claim. Accordingly, I grant Pieri's motion for summary judgment in full, without making any determinations about the objective element of Jusino's deliberate indifference claim.

C. Motion to Amend Complaint

Jusino moved to amend his complaint to add more claims in light of "new discovery that Defendant fail[ed] to provide the Plaintiff." Doc. No. 96 at 1. Jusino's core allegations in his proposed second amended complaint mirror his first amended complaint. *Compare* Proposed Second Am. Compl., Doc. No. 96-1 *with* Am. Compl., Doc. No. 34. The proposed complaint does not allege a new claim for relief. *See id.*

"Although Fed. R. Civ. P. 15(a) provides that the district court should freely grant leave to amend when justice so requires, it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). "Leave to amend may be deemed futile where the proposed amendments would fail to cure prior deficiencies or to state a claim." *Flowers v. Connecticut Light & Power Co.*, 2021 WL 5564085, at *2 (2d Cir. Nov. 29, 2021) (summ. order) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Jusino's proposed second amended complaint is substantially similar to his first amended complaint and would not change the outcome of Pieri's summary judgment motion. I deny Jusino's motion for leave to amend.

D. Motion for Sanctions

Jusino moved for sanctions against Pieri for her alleged failure to make "initial disclosures," and for "the manipulated/p[e]rjur[ed] declaration of Leonard Santarsiero." Mot. for Sanctions, Doc. No. 91-1 at 1. Jusino claims Pieri did not provide him with "all email communication to and from the defendant relating to [his] treatment." *Id.* at 2. The request is styled as a motion to compel Pieri to produce the emails. *See id.* A motion for sanctions is an inappropriate vehicle for conducting discovery. In any event, Pieri was not required to send email correspondence between her and Santarsiero in her initial disclosures. *See* Standing Order re: Initial Discovery Disclosures, Doc. No. 10 at 2-3 (listing the materials that a defendant must provide to a *pro se* plaintiff in her initial disclosures).

Turning next to the "manipulated" Santarsiero declaration, Jusino points to an email that Santarsiero sent to Pieri on September 17, 2021. "I think that clinically it would be better for [Jusino] to meet 1 x per week with a new clinician, at least initially, then the clinician can assess,

10

and establish goals and frequency of treatment from there." Ex. 1, Mot. for Sanctions, Doc. No. 91-1 at 6. Nothing in the Santarsiero declaration, however, contradicts Santarsiero's statements in the email. In October 2021, "[a]t the time that Mr. Jusino began therapy with Ms. Schena," Santarsiero declares "I believed he no longer required weekly therapy because enough supports were in place for Mr. Jusino[.] . . ." Santarsiero Decl., Doc. No. 79-6 ¶ 22.

I therefore deny Jusino's motion for sanctions.

### IV. Conclusion

For the reasons set forth above, I **grant** Pieri's motion for summary judgment, **doc. no. 79**, **deny** Jusino's motion for sanctions, **doc. no. 91**, and **deny** Jusino's motion for leave to amend the amended complaint, **doc. no. 96**. The Clerk shall close this file.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of March, 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge